And at this time, we'll hear D'Alessandro v. The County of Nassau. Good morning, your honors. Good morning. My name's Paul Monclair. I'm from the law firm of Mitchell, Silverberg, and Knopp, and I represent the plaintiff appellants William D'Alessandro and Josephine D'Alessandro. May it please the court. We are here because at 4.30 in the morning on December 23rd, 2012, three police officers threatened to arrest my client if he didn't open his door and let him in to see if there was some spousal abuse going on in my client's home. There was no warrant. That's conceded. There was no consent. That is conceded. The primary purpose of the Fourth Amendment, as this court well knows- Was there exigency? That's the issue. And there was- That's why I thought I'd mention it. Yes, there is, thank you, your honor. There is not a scintilla or grain of evidence of any kind of exigency here. That has to be an urgent, compelling need to enter a once or never kind of a situation. And that just didn't exist here. There was no, and it has to be determined upon objective reasonableness. Again, we- I understand your adversary's position on that. Having confirmed with the neighbor that she had heard screaming coming from the property within the hour. Wouldn't that be indicative of someone being hurt or possibly injured in some way? I think that's their basis for exigency. If that isn't enough, tell us why. Well, that certainly isn't enough. The case law is very clear on this. I mean, the cases that dealt with exigency and noise complaints or complaints of fighting, all say the same thing. There has to be some objective evidence, not just some mere speculation. No, now there's screaming going on, that's the objective evidence. And the reasonable inference would be that people don't scream, unless at least scream loud enough that they can be heard next door at 4 o'clock in the morning. Without there being something seriously amiss. So let's bracket that scream with other facts that came out of trial, if you'd let me do that. This report of a scream was from a neighbor who was about 150 feet away in a house in a suburban neighborhood. When she called the 911 operator, she basically said, I think I heard a scream coming from the vicinity of my client's home. She said she didn't indicate whether it was a scream from a male or a female initially. She said it might have been an injured worker in the middle of the night, because there was construction going on on the premises. Right, they did go and confirm. But wait, they didn't just go to confirm. The first thing they did, they arrived two minutes later. Right. At the house of my client. They did a perimeter search. Right, I read the record and they don't identify anything amiss. Right. Right, so then they go next door. And she says that she believes that she heard a sound of a person screaming from the vicinity of my client's property. If the court- And pounding, concussive noises. Well, not really. I don't think so. No, I mean, she said she heard yelling and what she thought was some kind of noise. Yes, I don't know if it was concussive noises. But it was- The question is only what was told to the officers and then what their actions were in light of that. So we're not asking you whether that's what happened, but whether that's what she told them. The testimony officer was very unclear on this. And you have to understand, and the court recognizes, that there's a presumption. Per se violation of the Fourth Amendment if you go in without a warrant. And if the government is going to be, if law enforcement is going to be relying on an exception, they have a heavy burden of establishing it by real evidence. So you have a scream. Someone could have dropped something on their toe. It was in front of a jury that assessed this evidence. Yes, and jury- And it was properly charged. It was properly charged. Those were my charges. I tried the case. So I understand that, Your Honor. That doesn't mean, look, the Second Circuit, this circuit has already held that when determining the objective reasonableness of an exigent circumstances defense, this court has an obligation to do a de novo review of the record. No, we have to find, we have to decide whether any reasonable jury could have so concluded. That's part of it, Your Honor, but really it's whether you can determine that there was evidence to establish an objectively reasonable basis. Well, correct, the evidence has to be sufficient to support it, but- So what was the evidence? A scream? One person talking about a scream? The police arrive there two minutes earlier, it is completely silent? Then they come, and then they get to the door, they want to see everybody in the premises. And one of the plaintiffs explains that his wife is bedridden. Correct. Right. And they thought, based on his demeanor and what the neighbor had told them, that they couldn't rely on that. That's the gist of it. Yeah, so tell us what's wrong. Well, what's wrong with that is they admit, the police officers admit, going back to the scream, that until they met with my client, they did not have probable cause, nor were there exigent circumstances. Well, it's an objective standard, so the question is not what they believed, but whether they did or didn't have it. Go ahead. That's correct, but they were there, and they talked to this witness who was somewhat unbelievable, thinking there was construction work going on at 3 o'clock in the morning. Counsel, you understand that we have to accept the facts in the light most favorable to the jury. I understand that. You say it's unbelievable, but we have to assume the jury believed it. Yes, but you have to look at the totality of the circumstances, Your Honor. If this were a criminal case, and this is the same standard, the fact that you would allow a search based on one person's remark that there was a scream coming from the vicinity of someone's house. Is it a hate scream or screaming?  She said a scream from the vicinity. Then she said later on they were screaming since 3 o'clock in the morning. That was never told to the police officers. When you look at the testimony about what police officers were told, that she heard screaming, and it woke her up. Screaming is not one squeak. Yeah, but it's also not specific. There's nothing objective, there was nothing to corroborate the scream. How would you elaborate on the nature of screaming? Well, you heard people fighting, two people's voices. She thought that it might have been an injured worker. She never said that there was spousal abuse. I mean, his basis for going in- People can be doing work at an inappropriate hour on their own home, pounding and nailing things in and constructing things that doesn't necessarily- At 4.30 in the morning? It would be something you'd call the police to complain about, isn't it? But that was not the reason that the lieutenant gave for going into this house. That's right, because the lieutenant disregarded the idea that either the banging was caused by construction or decided if it was caused by construction, that's not a basis for entering someone's home without a warrant. Look, he spoke to one witness, and his statement was that he believed that there was a possibility that there could be some kind of spousal abuse going on in my client's home. There was not a scintilla of evidence that there was ever spousal abuse. A man answered the door, and I guess it's not surprising he'd be put out answering the door at that hour in the morning, but then he declined to have his wife come to the door. Your Honor, may I make this- Which is something one would do if one had just beaten up a spouse. I know he didn't. I'm just saying that the police- He took care of his sick wife and he did not want her disturbed. This is not something the police know. Yes, and not only- I understand that. But the point is whether the police, having a report of unusual behavior at 4 o'clock in the morning, screaming, which is suggestive of someone possibly being injured, and then going to the location, and the individual not only being animated, but according to the officers, yelling and ordering him off the property. And they wanted to see everybody in the premises. And when he told them his wife couldn't come to the door, which turned out to be because she was bedridden, but they were suspicious that it could be because she was injured. Now, why does that not allow the jury to conclude that they acted reasonably here? Because, Your Honor, there is a per se violation of the Fourth Amendment if you don't get a warrant. If someone was working late at night, they could have gotten a warrant. Let me interrupt you. Unless there are exigent circumstances and the jury was satisfied that there were. The jury, the charges are correct. The jury was confused. I've done a lot of cases over the years. You never can tell what a jury does. We have a right to have this court take a look at these facts that are not in dispute. We're not disputing any facts here. And look at, is this what we want to do to the Fourth Amendment? To say, because someone thinks- Is this the weight of the evidence or sufficiency of the evidence challenge? This is a de novo review. Sufficiency of the evidence. That no reasonable jury could have- That no reasonable jury could have, on these facts that are undisputed found, exigent circumstances. That's correct. You've reserved a minute's rebuttal. I did. We'll hear from the other side. Thank you, thank you, Your Honors. Robert Vanderweg for the county and the police department. Judge Wright, the county would agree with your analysis of the record. I was mostly advancing what I understood to be your arguments. They're not necessarily our conclusions. Say it again. I said I was only asking counsel to respond to what I understood to be your arguments. I wasn't necessarily suggesting they're the court's conclusions. No, I understand that, and thank you very much. But that is the county's position. This is a situation in an exclusive neighborhood, not known for disturbances and what have you. A neighbor, the next door neighbor, calls the police department, says that they're screaming, she heard, that it's logged in and what have you. The police respond. Lieutenant Coppola, who is the primary witness, indicates that he was the supervisor. He goes, he checks around the house. Your position today that the mere fact of a scream in the dead of night was sufficient to render this an exigent circumstance? No. So it's the demeanor of the plaintiff that rendered this an exigent? Yeah, I would say, if I could cut through the chafe, that when Lieutenant Coppola was there, he has the report in the 911 of the screaming. He goes and talks to the complainant. The complainant not only confirms that she heard a screaming at the house next door, she's adamant that it's a human, it's not anything else. He goes to the house. He knocks on the, they knock on the door, it takes several minutes. Understandable, Mr. D'Alessandro appears. Now, they have now been operating with the fact that there is a screaming from this house or around this house. And the police go, they say, introduce themselves. They talk about, there's a screaming that was heard, is there a woman in the house? Now, Mr. D'Alessandro says, yes, there's a woman in the house, my wife, but she can't come and talk to you. She's an invalid, so of course, that's what you find out later. But what, that now, all those things trigger the police. What are they supposed to do at 4 o'clock in the morning in a neighborhood like this? And Mr. D'Alessandro is not cooperative. The adversary says, get a warrant. At 4 o'clock in the morning, by that time, if they get it, and what have you, and come back if there's a, what they suspect or they don't want to see, she's dead. There was no screaming going on at the time they were at the door, was there? That's true, but I mean, there is certain leeway, especially in domestic violence cases, which all the courts have recognized, and leeway is given to the police, and they must. Their protocol is in a neighborhood such as this, not a neighborhood that's prone to anything like this. And they end up with a very uncooperative person at the door who will not bring the woman to the door for whatever reason, will not let them in, and so they have no choice. But at that hour, and go and see if the woman is, in fact, there, okay, and not being hurt. It's a neighborhood with a lot of screaming? Say again, Judge? Explain this to me. What is it that makes the neighborhood special as a matter of the Fourth Amendment? Well, I think that- Is it a little cocoon? No, I think- So, explain why I should draw any inference from the fact that it's a wealthy neighborhood. Well, because I think there are neighborhoods with multiple, with detached houses and what have you, and so forth. If you hear a scream, you probably may not know exactly where it comes from. It may be a situation where the neighborhood, that's rather common and what have you. You're not going to find that in Plano, the village of Plano. I thought you were arguing that posh people don't scream. Say, no, I don't, please, I don't want to say that, Judge. However, the neighborhood is such that a screaming would be definitely out of place in such a neighborhood with acreage and what have you like that. Let me ask you, you said a moment ago that more leeway is given to the police in domestic violence circumstances. And I would like you to tell me the legal basis for that. Well, I can't give you an exact case on these fours. But I think the Tierney case in the Second Circuit talked about, in this day and age with domestic violence on the rise and what have you. And even indicates, I think, that the police are given leeway, maybe a lot of leeway in situations involving domestic violence and possible crimes. As long as they have probable cause to think that- Correct. That's- There's an exigence. No, yes, most assuredly, which, of course, was precisely the charge given to the jury. It's a very good charge, 20 pence, no objections. And the jury weighing- If the plaintiff here had, in a non-agitated way, merely said, no, please get a warrant, would that have Well, I can't answer that because he didn't say that, and he was belligerent to- But I'm asking you the question, I've asked you the question. Well, I think this is a lieutenant, a supervisor. I think he could engage in a conversation to try to persuade the individual that- The response in a non-agitated way, because I'm trying to be very precise here. In a non-agitated way, the response from the plaintiff is, get a warrant. Well, of course, these are not the facts, so now we're dealing with a hypothetical. I would, if I were that police officer, I would engage him and tell the individual, look, we're only here for your benefit, and for the welfare of what have you. Get a warrant. Okay, well, I would try to persuade him out of it, and if- You have not persuaded me. Get a warrant. And if he persisted, I'd call whatever supervisor there may be, and what have you, and see what they want to do, and bring more cops to the premises. You'd get a warrant, wouldn't you? Well, first of all, I don't know whether they could even get one at that hour. By that time, I don't know. But also, as Judge Azraq had this case, and what have you, as you're well aware of, this is, she denied the motion of the plaintiff for a 50, a relief, or whatever. Plaintiff never made the motion. So then, we're actually in a situation- But the motion was never made? I don't understand. The plaintiff never made a 50 motion during the trial before the case went to the jury. That's recited in Judge Azraq's ruling, which actually relegates the plaintiff to a question. If he wants to upset jury verdict, he's in the realm of manifest injustice, which is really difficult to overturn that jury verdict. And it's the county's position that it all went to the jury, and the jury resolved whatever it needed to resolve, evaluated the witnesses, and rendered a proper verdict, that's the county. Thank you. Mr. Moncler? Just very quickly, the Supreme Court has made it very clear that the essential question in determining exigent circumstances to justify a warrantless entry is whether the law enforcement agents were confronted by an urgent need to render aid or take action. And except for very limited, delineated circumstances, the police bear a heavy burden when attempting to demonstrate an urgent need that might justify the warrantless search or arrest. Let me ask you the question that I think was put in a very informed by one of my colleagues. What if the police had gotten to the location and there was screaming going on? Well, that's a closer question. There are cases that deal with this. Right, okay, now, you said that they got there within two minutes of the neighbor's call. And she reported that there had been screaming going on since 3 o'clock in the morning. Now there's silence. Why couldn't police have a reasonable concern that there was someone injured who might need help? They might have a concern, but that's a subjective concern, not based on any evidence. It's not objective. There's been screaming going on since 3 o'clock in the morning. Now there's silence, and there is a person who is in the premises, they know that, a wife, who the husband says cannot come to the door. Yes, and Your Honor, there is not a single case that has a single scream of a neighbor, which is nothing more than really a noise complaint, that says that that justifies a warrantless search of someone's home at 4.30 in the morning in the middle of the night. Whether or not it was, how it could be that you could argue that no reasonable jury could think that they had an objectively reasonable belief that somebody might have been injured and wanted their help. Because as a matter of law, if they thought exactly what you said, that is insufficient as a matter of law to establish exigent circumstances, period, full stop. There was no urgent need for anything. And in fact, she never said she suspected spousal abuse. Where did this come from? There's not a single piece of paper in any of the records that indicates this. I should say one further thing about this. If Your Honor asks, what if she just said get a warrant? Well, he did say that about ten times. Get a warrant, you're not coming in. I don't want you to disturb my wife or my children, my son. These are elderly people. He never even got a traffic ticket, this fellow. And this officer stuck his foot in the door, threatened to arrest him, then he went into the house. He looks in the house, he looks around, there's still no evidence of anything. He sees he's in pajamas, he was sleeping. This was a complaint made about two minutes ago. The police make him go into his wife's room with a closed door. We actually do- I'm sorry. Have the record and- Thank you. We have read this. I appreciate it, Your Honor. Thank you both. Thank you very much. We will reserve decision.